Thank you, Judge Newman, and may it please the court. The new trial set by the District Court for September 14th, and all other proceedings in that court, should be stayed because the be no prejudice to the patentee, SmartFlash, from that stay. In ruling otherwise, the District Court made three critical legal errors. First, the court treated Section 101 differently than the other grounds of invalidity or unpatentability. We know that's wrong from this court's decision in the benefit fundings case, as well as this morning's decision in the Versada v. SAP case, which holds that PTAB can review Section 101 determinations under the CBO. Second, the court resolutely looked backwards, not forwards. It looked at the water already under the bridge, the work already done, rather than the work remaining to be done, which now, since this appeal was filed, includes an entire new trial on damages, impaneling a new jury, having new experts, new doubts, new discoveries, all of which would be avoided by a stay. And the court faulted Apple for employing the procedures authorized by Congress in the AIA. And we hear a variant of this from my friends at SmartFlash, who claim that Apple is seeking a tactical advantage by using the CBM process. I would like to address first the factual error. Can I address that last question first? Because what does the clear tactical advantage for the CBM process look like? Well, Your Honor, two answers. First, it comes from that beneficial loan case, as the court knows, where the court said that it's part of the weighing of the equities, as in the traditional four-factor stay test, the balance of hardships, if you will. Does the prejudice to the moving party outweighed by the advantage gained by the not- Right. So I'm trying to understand what tactical advantage, if not the kind of tactical advantage that the district court talked about here, could be contemplated. I think the only ones that I could think of, Your Honor, would either be an unfair advantage, one unauthorized by law, or somehow gaming the system. Apple did not game the system here. Apple did exactly what the system required. And I think there's a disconnect there between the arguments being made and some of the district court's order and the facts of this case. So just give me a hypothetical example of where the gaming the system could come up in this context. Your Honor, I think that if a challenger waited literally until after the trial to then institute a CBM for the first time on grounds that were to file a petition for the first time on grounds that were available earlier in the case and did not act reasonably promptly, that could be the kind of advantage. That's not what happened here. What happened here is right after the Alice decision, and the court is familiar, of course, with the confusion after this court's decision in Alice. Once the Supreme Court decided Alice in June of 2014... I don't know why anyone would be confused after that. Me neither, Your Honor. The Supreme Court decided that case in the middle of June of 2014. Within three months, Samsung filed its 101 petitions, Apple then filed its 101 petitions, and we simultaneously moved on 101 grounds in the district court. Smart Flash makes it sound like, why didn't we just do that at the beginning of the case? Judge O'Malley footnote 8 of the court's opinion in Intellectual Ventures, as the court may recall, says that Congress didn't intend for parties to file CBMs at the beginning of the case. It was only when they became ripe. And a CBM is a difficult thing. I brought the first Apple CBM petition with me, Your Honors. It's 3,300 pages long. It stands six and a quarter inches tall, printed double-sided. And if you don't do this amount of work, the PTAB rejects the petition at the outset because you haven't set forth the grounds for review. But that's not the 101 petition. That is the one, that's the first 101 petition. It also has 102, 103 grounds in it, Your Honor. But that's the first petition that we're talking about in this case. These are substantial underpinnings. Because of the claim amendments? I'm sorry? Because of amendments, proposed amendments? Is that why? It's, the exhibits, Your Honor, include the prior art, references for the 102, 103 claims, as well as expert reports, and... But for 101, it's a much more streamlined process. It's, all of the grounds have to be set forth because of the statutory estoppel argument. Once the court, once the PTAB gets the final decision, the statutory estoppel provision kicks in. Let me ask about the 101. The, I mean, your first point. You're saying that the court treated 101 as substantively different. I'm not sure I understand how you get that from the opinion. He clearly did fault you all for not raising 101 sooner, and I think there's a fair argument that could be made that Alice changed the landscape. So, but I didn't see him say that somehow there's some substantive difference with 101 as to whether a state issue. Your Honor, he said, Judge Gilstrap said repeatedly, and my friends repeat this, that whereas 102, 103 require an examination of the prior art, and therefore involve the expertise of the PTAB, 101 is a pure question of law, and then therefore there's no advantage to be gained by a PTAB proceeding versus a district court proceeding. Well, but wasn't that partially, his point was that I've already looked at this as a there's nothing that, he didn't say that they don't have any right to look at it, or they couldn't reach a different conclusion. He simply said, I've already done this whole amount. Your Honor, he did, but he did it in the context of saying that a prior art might make the difference, and we think that under the statutory scheme, and certainly under the Versada decision today, it doesn't make a difference what ground of patentability is asserted. Congress set up this system of parallel adjudications in order that all authorized grounds of unpatentability can be referred to the PTAB. Once a proceeding is instituted, you will always have parallel litigation, if you will, and you can't even file a CBM petition until after the district court litigation starts, so it has to go in parallel. Then the question becomes, which should go first? Because if they both keep going at the same time, the courts, this court specifically, ultimately will end up in the unenviable position that I know several of you are familiar with from Fresenius and other cases, where there's a potential conflict. That conflict can be avoided entirely if one process or the other goes forward while the other one waits. Congress told us which process it's going to be by two specific provisions in the AIA. First, the estoppel provision. It works one way. It's PTAB to court, it's not court to PTAB. That meant Congress thought the PTAB would get to the decision first and specified the estoppel effect of the PTAB decision. And second, the stay provision. It authorized, and in some cases required, a stay of the district court proceedings. There is no authority for a stay of the PTAB proceedings. On the contrary, the PTAB proceedings are subject to a strict 12-month-after-institution statutory period that cannot be altered by either the parties or the PTAB, and Congress therefore expected that that would be expeditious. And in every judicial district of the United States, with the exception to my knowledge of the Eastern District of Texas, the District of Delaware, and the Eastern District of Virginia, the PTAB proceeding is going to finish before the district court litigation does. That's just generally the case. That's not true in every single case, but generally the way these patent cases play out. We are in a jurisdiction that moves faster, as perfectly entitled to do, of course, but Congress wrote a rule here for all judicial districts. This is not limited to any particular place, and they clearly thought that the PTAB proceeding would proceed first, the final decision. Whatever then remained of the case could be resolved in the litigation. I understand that some of this is just because these issues are all so interesting, but B&B hardware, the Supreme Court's decision in B&B hardware, there was a discussion about a stop of going the other way. Indeed, Your Honor. And is it just because the AIA writes in a stop of going one way at a time when it was an estoppel running from the court to the agency, would it? Well, you need a final judgment, for one thing, in the court. In this case, we don't have one, and I agree with SmartFlash, there is no estoppel question presented in this appeal. I think the interplay between B&B hardware and the general restatement principles that the court articulated there and the statutory estoppel provision in Section 18 will be, down the road, a question that this court is going to have to grapple with in the right It's another hard question, though, that is avoided. If the PTAB goes first and ends, we know the answer to the estoppel question because Congress provided it to us. Again, because they contemplated that the PTAB proceeding in all but the most, quote, rare and extraordinary circumstances, as Senator Schumer said, would go forward first in the PTAB and then in the district court. We'd also submit that those rare and extraordinary circumstances don't include this case. I think what Congress had in mind there was the kind of case, a competitor versus competitor case where the patent holder had a product on the market and would actually suffer real, quantifiable, demonstrable, factually findable injury. We don't have that here. We have, in fact, a district court determination that this patent holder would suffer no injury from this day. This case is all about money. It's a non-practicing entity. Any delay is fully compensable through an award of damages. The district court, which has been overseeing this litigation, ruled to that effect. My friends haven't challenged it. So that doesn't fit within that rare set of cases that might require an exception, particularly where all claims have been instituted. I apologize, Judge O'Malley. Let's go to your other two points. So you said that the first thing, one of the things you said was that there's so much left to do, partially because the court has now ordered a new trial on damages. But at what point in time are we supposed to be assessing? I mean, we've got virtual agility that sort of said at the time the motions filed, but said, OK, but maybe it could be at the time that it's granted, that the CBM is granted. But it never said it should be at the point in time that we're on appeal. I would answer that in four steps, if I may, Your Honor. First, I would take the language from the Versada opinion, which says the correct test is to look prospectively and not retrospectively. I would add that second to the language from virtual agility that says the date we look at that prospective question is the date the motion is filed. So standing on the date the motion is filed, what is going to happen forward in the litigation? Third, I would take the language from virtual agility, including footnote six, that says the court can take judicial notice of things that happen after the motion is filed if they bear on the stay question. And fourth. But I thought that footnote was only talking about judicial notice of things from the PTAB. I don't read it as broadly as you seem to. Your Honor, I would suggest that footnote four of intellectual ventures, authored by you, suggests that judicial notice is judicial notice. And if it is an event that is judicially noticeable, it may play into the stay analysis, which feeds into my fourth point. That must be one of the meanings of the section 18 provision that says this court may review de novo, because when it gets here, this court has to have some power to take into account those things. None of this should surprise. These are going to move quickly. The PTAB, once instituted, moves very quickly. District courts move quickly. And events will happen. And if it were the case that it were frozen in time, Judge O'Malley, you would have the odd situation where it's clear that a stay is required today, but you go back in time and it might have been a closer question. There's no sense in a remand or something. I think what Congress said by putting in the de novo review provision is, it's now here. Just decide. We've got a new trial on damages. We're going to have new expert reports. We're going to have a lot more work. And we're going to have a lot of work in this court. And I think it's clear that this court's work ought to play into the calculus. We would submit that. That looking forward to the future, this court will ultimately have to decide the Section 101 question. Clearly, that's right. Would it be more efficient to decide it in a single issue appeal coming up out of the PTAB after that agency adjudicator has rendered a reasoned decision, as in this morning's Versada case? Or would it be more efficient to wait, have a retrial, another jury, and all of those proceedings, and then have that issue come up with all of the other issues of non-infringement? Let me interrupt. If you weren't talking about efficiency, but if we were trying to figure out and to decide the optimum structure for the future, whether or not you're able to benefit from it now, what would you propose? Your Honor, I would propose that we follow the statute. The PTAB is put in first place. As Judge Bryson wrote when he was sitting as a district judge in the NFC Tech case, Congress intended the PTAB to make authorized determinations, quote, in the first instance. They go first. That comes to this court. And then anything that's left in the litigation gets resolved in the district court. That is what Congress put in place for, by the way, this narrow slice of patents. This isn't an across-the-board rule. This is for covered business method patents. The court also held today that that's a reviewable determination. The PTAB has already ruled that these are covered patents. And if you compare these patents to Alice, they look pretty darn close. So this is not an across-the-board rule. So, Your Honor, structurally, that's a policy question that Congress answered. And in yesterday's decision in the Cuazzo case, I think the judges were of two minds on the claim construction issue, but all agreed that this was a new development, a parallel system of agency adjudication deliberately set up by Congress for certain authorized issues and certain authorized patents. It should go first. And if we take that as the defining principle, as I think the statute says, and depart from it only in the rare and extraordinary case where the patent holder, after institution, would suffer harm, that does take care of my client in this case, but it would also take care of my clients where I am representing the patent holder, and it would be a fair and neutral rule that applies to everyone. And that's the rule we propose. Mr. Perry? No, please. Just one quick question you talked about. Don't look back. Look at what is facing the court at the present time. But doesn't the fact that the district court, as in this case, had extensive experience with these patents, dealt with this case over an extended period of time, is fully familiar with all of the issues. I mean, doesn't that have an effect on the efficiency of the district court in going forward, in continuing, shall we say, sort of the momentum in getting this case resolved, as opposed to, at this point in time, despite all of the work that has been done, sort of putting everything on hold and then picking it up months later and having to start afresh? Not really, Your Honor. Certainly not in this case for this reason. The only substantial issue that has to be asserted claims that the PTAB has instituted review on is the Section 101 issue. It is a question of law. If it is decided, if they confirm their initial determination that these patents are ineligible, all of those other issues fall out of the case. So the most likely scenario is the district court never has to return to all that work. The case is simply over. Now, it is possible... What if the patent office doesn't? And if the patent office doesn't... Then there's no assurance that that will happen. I understand. Well, they have confirmed, Your Honor, their initial determinations in 101 cases, 100% of the cases and 97% of the claims. So there's a pretty good assurance. Really? Yes, Your Honor. It's 50 101 institutions, 32 final decisions, 100% confirmation as to patents and 97% as to claims. So there's a pretty good assurance in this case where they've already found more likely than not ineligible that it will be confirmed. This court, of course, will have to review that. I understand that. But on the other scenario, and I'm eating into my own time here, the court will be able to pick it up. What's left is a damages retrial, according to the most recent order, with new experts, new discovery, and so forth. Everybody's going to have to do something new to start so that in the unlikely event that this patent is ever held to be sustainable and actionable, then we can pick it up in the future. And again, I need to return to the point the court has already found that, most importantly, doing so would engender and visit no harm on the patent holder's smart collection. Judge Germano, do you have a question? Judge Newman's graciously allowing me to ask one more question. If we're talking about what is most efficient in getting to the end game as quickly as possible, given our jurisprudence, which you know I don't really agree with, but you could actually, you have a right to appeal as a right from the liability determination, even without a damages trial having occurred. So you could ask the trial court to enter judgment and take an immediate appeal right now of all of those issues, including the 101 issue, right? Your Honor, we've actually taken the position of the district court that liability and damages is inextricably intertwined in this case and that it can't be separated out that way. The court reserved that issue pending smart flashes, new damages approach to see whether or not it would have to decide that. We don't have a final decision on that question and we don't think that kind of an appeal would be right in this particular case. I don't think that's a generalizable principle. Some cases might well fall in that category. Certainly as to efficiency, though, of getting everything wrapped up in the broad run of cases from every district and every circumstance, letting the PTAP go first under its statutory timeline is generally going to result in the fastest thing and avoid one of the other problems that I know members of this court don't agree with, which is the conflict between the PTO and the courts. OK, thank you. We'll stay here if we have time. Thank you, Your Honor. Thank you, Terry. Mr. Caldwell. Excuse me. May it please the court. I'd like to start with an observation that Judge Newman made in virtual agility. The American Vents Act permits, but does not require, the district court to stay in earlier filed litigation during later requested post-grant PTO proceedings. Such a stay is not obligatory, but is consigned to the district court's discretion. And I think what we have here is we have very thoughtful and thorough analysis by the district court, who has a lot of experience with this case and has put a lot of effort into this case and carefully analyzed the statutory factors as to four different parties and put out a careful ruling that follows the statute, denying a stay as to Apple and then the Samsung defendants, but granting a stay as to Google and Amazon, who were postured very differently. They were well before Markman, before even the start of discovery in the case of Amazon. And I think what we've seen, Your Honors, is that Judge Gilstrap carefully followed the statute and appropriately denied the stay as to Apple. What about the forward versus backward looking thing? I mean, it's clear that Judge Gilstrap was frustrated by how much work he'd already put into the case. But there is still much left to be done, especially now with the new trial looming, right? Well, I would say that there's comparatively less to be done because so much has been done. As to whether the court can appropriately look both forward and backward, I think there are a couple different aspects of that. One is what the court has already done certainly informs and elevates his level of knowledge of the case and familiarity with the case. And handling the remainder of the short amount left in this case now prevents the need to completely reboot and reload all of these issues in the court's mind at a time later, if, as we believe is correct, this court ultimately determines that these patents are patent-eligible subject matter. Also, it's not just a new trial on damages, but you've got to go back and press the restart button on your expert, right? I think that's to be determined. We got the ruling from Judge Gilstrap just a couple of days ago. And at this point, I think, honestly, it's just a matter of us still figuring out exactly where that puts us and looking at what we have to do to go and present the new trial. He set the new trial for the middle of September. Clearly, Judge Gilstrap is not anticipating that we are backing this case up many, many months and starting from scratch. While I do think, obviously, some work is left to be done, and I wouldn't dare argue otherwise, I don't think that it's the case that we are backing up significantly and starting all over again. Do you agree that in this particular case, you are in a unique situation where the damages and the liability determinations are inextricably intertwined along the lines that the Supreme Court said in gasoline product? Or is this a situation where under our 1292C jurisprudence, Apple could immediately appeal the liability determination? I think it's the latter, particularly once judgment as a matter of law on invalidity and infringement are denied in this case. And Judge Gilstrap has diligently been putting out orders, those are two that haven't been. But he'd have to enter final judgments. I mean, the judge would have to decide that that's the way to go. Correct. But I do think that this case is appropriately postured for that if Apple chose to avail itself of taking up those liability issues right now. I do not believe that this is a case where damages and invalidity are inextricably intertwined. That notion was raised, to my knowledge, for the first time in oral argument last week in front of Judge Gilstrap when there was a whiff of a notion that we might go back and revisit some damages. And Apple said, well, let's just make sure we get to redo everything we can on liability too. And that's the first I've heard of it, but I don't see any reason that it would. I don't know how far down this path you'd like to go, but for example, Apple had no non-infringing alternatives and stipulated to that. And once there's a finding that certain functionality already infringes, and there's a finding of no non-infringing alternatives that Apple had, this case is wildly different than many cases in which you might have to go and slice up a lot of small, fine boundaries on damages in order to retry damages. I don't believe they are inextricably intertwined. And to go back to your earlier point on looking backwards, there are two different cases where Judge Bryson, sitting in the Eastern District of Texas by designation, but also this court in virtual agility, has recognized that for factors two and three, it is appropriate to look at where we are in the case, not only in terms of what is left prospectively, but also what has been done so far, and to look at the dilatory motive. And I think, Your Honor, my friend representing Apple has brought to the court's attention the congressional intent, and that has been addressed extensively in the briefing. Plainly, from congressional intent, the covered business method review system was designed to be used as an alternative to litigation. Well, let me ask you that. I mean, yes. I mean, obviously, we, several of us, argued in the prose of dissent that the entire IPR system was designed to be an alternative to litigation. But the CBMR, there's one piece of it that makes me wonder about whether that's true, and that's the distinction between IPRs where you have to institute them within a year of litigation being instituted, and CBMRs that are purposely left completely open-ended. So Congress obviously did contemplate that you might have a case that's pending four years before you ever get to this point. So doesn't that indicate possibly a different legislative intent with respect to the two types of proceedings? I don't think so, Your Honor, because although there's not a hard and fast deadline, a hard and fast deadline perhaps wouldn't make a lot of sense. I mean, I realize that in some instances arbitrary deadlines are picked, and one could say that the one-year deadline in the case of IPRs is an arbitrary deadline that Congress picked. But what Congress did do in terms of the CBMs is we have congressional intent, and then we have a four-factor statutory test that tells us what to look at. And it reminds me of the point that Apple made in these proceedings. I'm not exactly sure how to characterize it, but essentially the notion was that because we are in one of the districts that's working really hard to get through things quickly, we should be able to do things that are really, really late in the case as a result, almost as though the district court's opinion should be less credible because he has worked very, very hard to get this case to trial. That's not like we filed the case and went to trial eight months later. It still was almost two years before we went to trial in the Apple case, but he did work very, very hard. And I think what Congress has told us is we're trying to have an efficient, cost-efficient, time-efficient alternative to litigation. But when you wait until the litigation is 90% of the way to trial, you negate that. And I think it probably bears repeating from the brief that plainly Congress never intended there to be a matter where getting close to the eve of trial, you file so many CBMs, you get to the point where on six patents there are approximately 48 CBMs. The system is, quite frankly, being abused and is definitively broken in a situation like this where a party claims from the day it answers we have a 101 defense and just waits and strings out CBMs, filing them serially just until something hits right up to the eve of trial. If that's going to stay and say, never mind what your motives were, never mind the effort that the district court has put in, we're going to go ahead and stay it. The system is actually encouraging precisely the opposite of what it's meant to encourage, because then what it encourages is litigation abuse from those who are the alleged infringers when arguably it's said to curb litigation abuse from people who are sending out too many letters and abusing really terrible patents that shouldn't have been granted or things of that nature. What we've done is authorize a new methodology by which accused infringers can basically abuse patent owners. In looking at the standards that Congress set forth, you concede that as to see there is no undue prejudice to you from waiting. We do not concede that, Your Honor. Judge Gilstrap found that there was no undue prejudice. He nevertheless found that that factor still favors a stay because of the tactical advantage part. I'm not trying to steer you away from your question, but I do not concede that there is no undue prejudice. What's the undue prejudice? There are several different aspects of undue prejudice. What Apple is seeking to do, SmartPlus is in a business of licensing, and Mr. Commercializes Inventions, and that didn't pan out, and I'm not trying to play the sympathy to the court, but he made those efforts. Now, because of where the market stands, his opportunities are if he tries to license his patents. What Apple suggests is, we've taken this time, about two years, to proceeding this litigation. Let's put it on hold. We'll just say timeout, nothing on the litigation. We won't actually take the fastest route to getting Federal Circuit review of the 101 issue. We'll take the slower route. And then, by the time the patents could come up to the Federal Circuit, following the Patent Trial and Appeal Board review, and then come back, go back to the District Court, reinstate a case, and run that through to conclusion, we're talking essentially the expiration of Mr. Rack's patents, and basically no way to license. I've had a lot of cases to think about this week, but I thought that the facts were that you all bought his patent portfolio. What ended up happening, Mr. Rack still owns basically half of it. It's slightly diluted by some folks that have invested, but it's not the case that we folks bought his patent portfolio. I'm happy to explain it as much as you want, because I don't want to be misleading. I don't want to be misleading. He definitely found a friend who said, I will help you do prosecution. I will help you get out of personal debt. That definitely happened, and I don't mean to mislead you by my answer, but he's very much resisted at the times when before the patents issue, resisted the people who tried to, around the time of the first patent issue, get them for a couple hundred thousand because he was desperate. He's done everything he could to stay attached to them because he firmly believed in it. Based on your experience with this case, what kind of structure would you redesign? We've seen enough appeals coming to us after the American Vents Act to illustrate all sorts of variations of the relationships as to what comes first and after and at which stage and so on. As far as this circumstance is concerned, I gather that your view is that there should be some specific time period during which one can have resort to one forum or the other and make a commitment, or if in fact we're to have concurrent proceedings, it's very hard to draw bright lines as to how much concurrency or would you leave everything to the courts, to the patent office? There seem to be flaws that are forcefully brought to our attention with each new appeal. I think the answer to your question is, unfortunately, because of the law that we're operating under, there can't be a bright line rule and I actually think that's terribly important in this case because what you're hearing from Apple is that Congress has expressed an intent that the PTAB gets to rule on issues like this in the first instance and that's not in the statute that we are advocating. The legislative history is full of that, and in which case the appropriate step then would be for the trial courts to wait until the patent office procedures are over without trying to draw lines as to when they should be begun, but one sees inequities. You've pointed some out in this case, if we go that way. Yes, Your Honor, and I think, to be quite candid, the test is going to make it where it's not amenable to a bright line rule. I don't think that you can even say, for example, I don't think you can say if it's brought before or after a Markman hearing, and I think it comes down to, the reason I say that is it comes down to different district judges based on, they've figured out what works for them, and they manage their dockets in a particular way, so there are some district judges who wait and wait for trial in connection with summary judgment. I'm only picking that as an example because I don't think, because of the way district judges manage their dockets, and they have wide latitude in how they manage their dockets, I don't think it's amenable to a bright line rule, and that's why I believe your dissent in virtual agility is very insightful on this point because I think you have district judges who have seen the conduct of the parties, have looked at what the parties have said in their pleadings, and what their conduct has been throughout the litigation, and they can say, in this case, you've told me that this defense was available to you a long time ago. You could have requested it a long time ago, and I think that's why district courts looking at the factors are, we're going to have to give some deference to them, although I know the statute permits de novo review to ensure consistent application of established precedent. I realize that, but the district judges have a lot of insight and will make determinations that should be entitled to some discretion. In this case, for example, when Apple and Samsung finally raised 101 petitions at the PTAB, they didn't even notify the district court until after the Apple trial had taken place, just as an example. So, let's have a free look at the cards. Let's see the cards that are faced down. We'll go ahead and move for summary judgment on 101. We'll move for summary judgment on multiple non-infringement grounds. We'll move for summary judgment on invalidity based on anticipation, based on obviousness. We'll try to dauber your expert, which they were successful in doing, and then over the holidays, we redid a new damages model. They tried again, and that dauber was denied. All of this took place, and then a trial took place, and then it was a couple of months after the trial that once some claims were instituted, they came to the district court and said, by the way, here are these 101 petitions we filed many months ago. We're getting some traction on them now. We'd like to stay the case. I know what the response would be. If you look at intellectual ventures, we said that's the relevant point in time. Until it's granted, it's probably pretty rare that a district court is going to enter a stay. What was their obligation until they knew they actually were going to get a grant? I don't know that I'm saying they had an obligation. What I'm saying is, if you also look at virtual agility, for example, it also tells you a district court can either deny without prejudice to refiling or can reserve a decision, I think is actually the way it's phrased, until there is an institution decision. My point is simply that there was actually no effort to reduce any of the litigation cost, time, money in this case based on these 101 petitions. Is that what you think tactical advantage means in the third prong? I think the tactical advantage that's in this case certainly at least includes that. I wouldn't say that that's what it means as it meets the bounds of tactical advantage. I think your point, your question earlier, I'm glad you asked again because I wanted to respond to that. In this case, you do see a tactical advantage because, not just because Apple didn't notify the court, hey, we've got these on file. Apple essentially designed the timing of its filings so it could take every shot possible, including the jury trial shot. Aren't they entitled to think through their best tactical approach? We see extraordinarily creative lawyering in these cases. Why shouldn't they have an opportunity to think of their advantage? I don't want to take you too far down this path of philosophy. You'll have another opportunity in arguing with Sampson. Anything else you need to tell us in a moment? Would you like me to answer the question that you began? If there's an answer. Well, I think there is an answer. I think there are very talented and creative lawyers. Hopefully, that sentiment goes for both sides. Everybody's working very hard for their clients. As part of being a talented and capable lawyer who pled in the first instance that you had a Section 101 defense, they also could not just cite congressional intent where it's helpful, but actually try to advance congressional intent by having moved far earlier. I think that's where the tactical advantage comes out. And the district court properly found that Apple sought a tactical advantage by delaying. Thank you. Okay. Thank you, Mr. Caldwell. Mr. Perry, before you begin, I want to confirm something. You said that our law says we have to look forward and not backward. And you cited Versada. We weren't talking about this morning's Versada case. Your Honor, the previous Versada case, which was vacated as moot that Judge Lynn said on the panel, that's correct. Several Versadas out there. Right, but that's not the law because it never mandated that it's been vacated. Virtual agility says the same thing, Your Honor, not in quite such a concise term. Of course, Versada cited virtual agility for that, which was the reason we pick the motion date and look forward from there is what happens next is the relevant period. Well, if that's the case, then what is the point of the Congress listed? Whether or not the depositions have been or discoveries have been completed and a trial has been scheduled. Doesn't that indicate that Congress did contemplate looking backwards? No, I think Congress contemplated looking forward. When certain things have passed, there is less to be done in the future. And at some point, you get to the end of the case and then it's over. But wherever one is in the case, the question presented by the stay application is to look forward from there and see what remains to be done. Here we have at least a retrial on damages, an appeal, and a cross appeal. And so it's wherever we are and it's just simply a recognition that there will be less to be done. Mr. Caldwell accused Apple four times or three times maybe of abusing the system by waiting too long to file this petition, but you never once heard him say the word Alice. These are Alice patents, Your Honor. These are computer implemented business methods. The law was in confusion before the Supreme Court decided Alice. I apologize for saying that in this forum, but we were all here for Alice and that's the case. But everybody was making arguments about 101. We preserved the 101 argument, Your Honor. It is in our answer, as you said. And as soon as the Supreme Court clarified what the standard was, we moved simultaneously for summary judgment in the district court and instituted the proceedings in the PTAB. There is no statutory deadline. The PTAB has ruled that it was timely. It's instituted the proceedings. So it's not an abuse of the system to preserve the argument to present them at the appropriate time. I mean, if you anticipated it in your answer and everybody knew that there was a huge debate, we had the ongoing analysis that had gone up to the Supreme Court. The Supreme Court took it. I mean, to wait necessarily for the Supreme Court, I think that's pushing it a little bit. Well, Your Honor, to be clear, the CBM petition has to set forth the grounds for patentability and it is the document that then goes forward to the final decision. If you haven't set forth the proper grounds, the estoppel rule kicks in to that final decision. When it was being seriously debated simultaneously, contemporaneously, in the Supreme Court, whether these kinds of patents were subject to 101 at all and what the standard would be, I actually think it would have been irresponsible to submit the CBM petition while the Supreme Court was considering that petition, giving the statutory estoppel rule. So I actually don't agree with the Court's hypothetical. Certainly, it was not unreasonable for Apple to wait for the Supreme Court to clarify that question and then promptly file in both forums as Congress authorized. As for the gasoline products question that Judge O'Malley asked about, it's on page 6 of the new trial order that we submitted yesterday. Apple argues gasoline products, blah, blah, blah, quote, given that the Court expects SmartFlash to present at the new trial a damages model that moots this issue, the gasoline products issue, as raised by Apple, the Court declines to address Apple's argument this time. It couldn't be clearer to me that we both need a new damages model and it's still in play whether or not the inextricably intertwined is there. Third, Your Honor, you asked me what the clear tactical advantage was. I mentioned the broadcast innovation case, but I didn't have the quote in mind. It's at page 10 of the Westlaw version of that opinion under the heading, Will they stay unduly prejudiced to the non-moving party or present a clear tactical advantage? And the Court there said that's what the case that Congress drew the four factors from. The Court there said, quote, This factor is best summarized by one question. Do the plaintiffs have an adequate remedy at law? Period. Question mark. These plaintiffs do. Now, Mr. Caldwell got up and said they are arguing that. They do have a footnote where they say there would be some licensing thing. You will note there is no citation to the record. We had a five-day trial in this case. Mr. Racks testified there is no evidence of any harm, no licensing, no nothing. We make all of these arguments that the Court is interested in our injunction papers in the District Court because it goes to that factor of the injunction. We have pointed out that there is absolutely no evidence of any harm whatsoever, much less irreparable harm. This is a case about money. They can be compensated. Fourth and finally, Judge Newman, you asked my friend what to do. And I think his answer was in a variant of leave it up to the District Courts. Have a case-by-case determination. With respect, that would result in what Senator Kyle called the dog's breakfast that existed before the AIA. Whatever else Congress did, it was clear that it wanted more uniformity as to this precise question, when stays should be issued. It gave this Court de novo power, automatic appeals, full review, and when the Court is exercising that, it ought to have standards for the benefit of this Court, the District Court, the litigants who have to take these cases. This Court, Judge Newman, has had a lot of cases on the stay issue. It's only had one case, however, on the merits of a CBM, this morning's Versada case, and those are coming, though. As I said, there's 32 final decisions they're going to get here. These issues need to be sorted out. A default rule, and I would submit it as this, when CBM review has been instituted on all claims in the case, the District Court has very little discretion. That discretion is limited to prejudice to the opposing party, and in the absence of prejudice, a stay is required. That is a neutral rule that can be applied across the board, in every case, and in this case, it means the stay should have been entered here. A stay of all proceedings, including entry of judgment, should be entered, respectfully submit, by this Court. Thank you. Thank you, Mr. Perry and Mr. Caldwell. That concludes the argument for Apple.